UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

GABRAEL and SHELLY GUMANDAY,  No. 11-13655

Debtor(s).
_____/

Memorandum re Confirmation of Plan
_____

    Debtors Gabrael and Shelly Gumanday filed their Chapter 13 petition on September 30, 2011. Their plan of reorganization, filed on October 28, 2011, provides for payments of $570.00 per month for 60 months resulting in an estimated dividend to unsecured creditors of 14%.

    On December 5, 2011, unsecured creditors Carlos and Lisa Talamantez objected to the plan. They argued that the plan was not filed in good faith and that not all of the Gumandays' disposable income was pledged to creditors. They later added a claim that the plan does not meet the "best interests of creditors" test.

    Two weeks ago, on March 28, 2012, the Gumandays amended their schedules of income and expenses. They made several changes, but the bottom line of their alleged disposable income stayed essentially the same. The court held an evidentiary hearing on the objection this date.

    The court finds no merit to the allegation that the Gumandays have acted in bad faith. Gabrael Gumanday is an electrician who, along with many others in the construction industry, has had difficulty finding employment recently. While he occasionally has work, his income the past three

1

years has been primarily unemployment insurance. Shelly Gumanday operates a tanning salon business which she purchased from the Talamantezes. The Gumandays have two children, aged 13 and 6. Their Chapter 13 filing was a logical response to economic hard times and their plan represents a good faith effort to reorganize with meaningful payments proposed to their creditors. The mere amendment of schedules to modify estimates of their income and expenses does not render their original schedules perjury, nor does it rise to anywhere near the level of bad faith. The court finds that the Gumandays have met their burden of demonstrating good faith.

Section 1325(a)(4) of the Bankruptcy Code provides that a Chapter 13 plan must pay creditors as much as they would receive in Chapter 7. The Talamantezes argue that they would do better in Chapter 7 because a hypothetical Chapter 7 trustee would sell the tanning salon business. This objection is based on the faulty presumption that the business could be sold by a trustee for as much as the debtors might realize in a voluntary sale. In the latter situation, a sale would include a covenant not to compete which a Chapter 7 trustee cannot offer. See *In re Beck,* 309 B.R. 340, 353 (Bkrtcy.N.D. Cal 2004). In this case, the Gumandays have established that their plan meets the requirements of § 1325(a)(4).

Section 1325(b)(1)(B) provides that if an unsecured creditor objects the court may not approve a plan unless all of the debtor's projected disposable income is applied to the debtor's payments. This is the real issue in the case, since after discovery by the Talamantezes the Gumandays amended their schedules of income and expenses. The amendments were extensive and yet, conveniently for the Gumandays, they came out to the same disposable income as the original schedules. This raises the question of whether they started from the bottom line and worked backwards, changing their story to fit the discovery while keeping their proposed payment the same.

The court begins by noting that amended schedules do not make the original schedules nullities. The original schedules are still evidence which may be considered by the court. *White v. Arco/Polymers, Inc.,* 720 F.2d 1391, 1396n5 (5th Cir. 1983). In fact, the court often finds that the original schedules, made before an objection is raised, are more reliable than later amendments made

2

in response to an objection.

In this case, the original schedule of business income and expenses showed that the tanning business generated $4,851.00 per month in profit but the amended schedule showed only a monthly profit of $1,377.00 per month. While the amended figure is more in line with the Gumandays' federal tax return (admitted at the request of the Talamantezes), the court cannot find that the Gumandays have met their burden of showing that payments of $570.00 per month satisfy § 1325(b)(1)(B) even though their proposed budget is reasonable.

After review of all the relevant evidence, the court finds that payments of at least $750.00 per month are necessary to meet the requirements of § 1325(b)(1)(B) at the current time. During the life of the plan, the payment may of course be changed up or down pursuant to § 1329(a) on motion of either the Gumandays or the Talamantezes[1] (or the Trustee) if the income changes.

For the foregoing reasons, the court will sustain the objection based on § 1325(b)(1)(B) and will accordingly deny confirmation of the Gumandays' plan.[2] However, if the Gumandays amend their plan to provide for payments of $750.00 per month for the remaining term such a plan will be confirmed, without prejudice to modification pursuant to § 1329(a). If the Gumandays fail to so amend their plan within 10 days, counsel for the Talamantezes shall submit a form of order denying confirmation.

Dated: April 11, 2012

Alan Jaroslovsky
U.S. Bankruptcy Judge

---

[1] The Gumandays have scheduled the claim of the Talamantezes as disputed. If they object to the claim and it is sustained, the Talamantezes would lose the right to seek modification.

[2] The court finds the other grounds for objection raised by the Talamantezes to be without merit.

3